THOMPSON *vs.* GORDON.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A merchant who is even in failing circumstances, and under protest, may sell and dispose of his property by valid contract, to a *bonâ fide* purchaser. The presumption arises from his being under protest, that he lacks money, and it is necessary to sell property to raise it.

The principle that the property of a debtor is the common pledge of his creditors, is not peculiar to the commercial law; for as long as the debtor is in possession of his property, and until a surrender, he retains the power, and it becomes his duty, to sell and reduce it to money, for the purpose of discharging his debts.

The *bonâ fide* purchaser of property from a failing debtor, is in no danger of being disquieted in his title or possession, when no other ground of suspicion exists but the protest of his vendor's notes.

This is an action to compel the defendant to comply with a sale and purchase by him, of four lots of ground, in the city of New-Orleans, situated on Delord-street.

The plaintiff alleges, that he made said sale through the intervention of Richard Russell, H. C. Cammack and Joseph C. Whitall, to the defendant, for the sum of thirty-one thousand four hundred dollars, payable by instalments; that the latter refuses to comply with the terms and conditions of the sale, although called on, and the act of sale tendered, etc. He prays that the defendant be condemned to furnish his notes and obligations for the price of said property, according to the terms and conditions of sale.

The defendant averred, that he could not accept the sale, or furnish his obligations, as required, for the price of said property, because the plaintiff, being a merchant, was insolvent, and his paper under protest; that the plaintiff has no right to pass a sale of the property, and he would be liable to be disturbed by his creditors.

Upon these pleadings and issues the cause was tried before the court.

It was admitted that the commercial firm of Samuel Thompson & Co., of which the plaintiff is a member, had suspended payment at the time, and before the date of this transaction.

The district judge went into an elaborate inquiry, relative to the effect of a suspension of payment by a commercial firm, on its right to sell and dispose of property belonging to the members thereof, when they are considered in a state of insolvency. He finally decided that the action could not be maintained; and from judgment rendered in favor of the defendant, the plaintiff appealed.

*J. Slidell*, for the plaintiff.

1. The appellant relies upon articles 1981 and 2628, of the Civil Code, and upon the general principles of law, which leaves to every man the free disposition of his property, unless where positive legislation has limited such right. The articles cited by the counsel of the appellee, refer only to contracts made in fraud of creditors. It is not pretended in this case, that there is any fraudulent intention on the part of either the vendor or the buyer. The fact of a merchant being under protest, does not constitute insolvency. More than one year has now elapsed since the sale was made, and all the parties, plaintiffs in this suit, are still in the possession and enjoyment of all their rights of property. They have not failed; on the contrary, all of them have made arrangements for the payment of their debts. The proof of their not having failed, is the state of the record in this court. Had either of them made a surrender of property, this case could not have been submitted to the court for its judgment, until the syndics of the insolvent, had been made parties. Were the judgment of the inferior court sustained, more than one half of the whole mercantile community of Louisiana, and a very great proportion of those engaged in other pursuits, would be deprived of the power of alienating their property. However beneficial such alienation might be to their creditors, its effect would be to drive into court hundreds, who, if allowed to administer their own

EASTERN DIST. property, would not only be enabled to pay all their debts,
*May*, 1838. but to secure a surplus.

THOMPSON
*vs.*
GORDON.

2. In this case the plaintiffs rely upon the fund withheld from them by the defendant, to aid them in paying their debts. If the doctrine of the District Court be correct, they cannot alienate their property so long as their notes remain under protest, while the direct effect of the decision is to deprive them of the only means by which they can hope to meet their engagements.

*Denis, contra.*

1. The plaintiffs attempt to obtain from the defendant, his notes for the price of property, which, they allege, he had sold him.

The defendant resists this claim; it might suffice for him to say, the contract not being put in writing, can produce no effect; but this ground is not taken, and the existence of the verbal contract is not denied. The defendant maintains that he cannot now, with safety, receive the transfer of the property from the plaintiff who has failed in business.

2. The defendant relies on sections 23 and 24, page 137 of the law of 1817, on voluntary surrender; and on the following articles of the Louisiana Code, 1963, 1964, 1965, 1966, 1968, 1970, 1972, 1973, 1974, 1976, 1977, 1980, 1981, 1983, 1984, 1989. 3522, Nos. 15 and 28.

3. The plaintiff relies on article 2628, and 1981. In article 2628, and in the chapter which treats of the giving in payment, it is stated, " in cases of insolvency of the debtor, he may, although insolvent, lawfully sell for the price which is paid to him, but the law forbids to give in payment, etc.

4. The French text does not say *lawfully* but *valablement;* but are these lawful sales or valid sales by an insolvent, to be so in every case? Is it contended that all sales by an insolvent, by virtue of article 2628, are to be valid? If so, what becomes of the sections 23 and 24 of the law of 1817, on voluntary surrender, which is preserved by the code? What becomes of all the articles above cited, to annul contracts

made in fraud of creditors ? It will probably be said that <span>EASTERN DIST.</span> these articles do not apply ; this would be difficult to <span>*May*, 1838.</span> demonstrate.

<span>THOMPSON
*vs.*
GORDON.</span>

5. The article 2628, must be understood, and contrued with the very article cited by the plaintiff : article 1981. That is, that sales made by an insolvent, in his usual course of business, shall be valid ; that is to say, that if a man is a grocer you may safely buy groceries from him, although he be insolvent, but is there such trade as house and lot dealers ?

6. The defendant also refers the court to the cases of *Brown* vs. *Kenner et al.*, 3 *Martin*, 270. *Meeker, assignee*, vs. *Williamson et al.*, 4 *Martin*, 625. *Hodge* vs. *Morgan*, 2 *Martin, N. S.*, 64. 4 *Louisiana Reports*, 256. *Beaudin* vs. *His Creditors. Thorn et al.* vs. *Morgan*, 4 *Martin, N. S.*, 294. *Atwell* vs. *Belden*, 1 *Louisiana Reports*, 504.

*Martin, J.*, delivered the opinion of the court.

The defendant having entered into a contract for the purchase of several lots of ground, of the plaintiff, refused to perfect it by the delivery of his notes for the price, on the ground, that since the contract a considerable number of the notes of the plaintiff, who is a merchant, have been protested, and he is in failing circumstances ; whereby the title which he would give to the defendant, might be attacked by his creditors, the defendant annoyed and disturbed, and lose the price, if the plaintiff did not pay it to his creditors.

There was judgment for the defendant, and the plaintiff appealed.

We are unacquainted with any law which forbids a merchant, whose notes are protested, and is in failing circumstances, from selling any part of his property, even land ; for, if his notes be protested, the presumption is, that he lacks money to take them up ; and the course of business must then be, to sell property to raise the money. The laws of this state make no distinction between the case of a merchant and that of any other individual, nor between real and personal property. The distinction which may exist else-

<span>A merchant who is even in failing circumstances, and under protest, may sell and dispose of his property by valid contract, to a *bonâ fide* purchaser. The presumption arises from his being under protest, that he lacks money, and it is necessary to sell property to raise it.</span>

The principle
that the proper-
ty of a debtor is
the common
pledge of his
creditors, is not
peculiar to the
commercial law;
for as long as the
debtor is in pos-
session of his
property, and
until a surren-
der, he retains
the power, and
it becomes his
duty, to sell and
reduce it to mo-
ney, for the pur-
pose of dischar-
ging his debts.

The bonâ fide
purchaser of pro-
perty from a
failing debtor,
is in no danger
of being disqui-
eted in his title
or possession,
when no other
ground of suspi-
cion exists but
the protest of his
vendor's notes.

where, between real and personal property, as an object of commerce, appears of late to have almost vanished ; for vacant lots have been as frequently purchased for the sole and avowed purpose of making profit by a re-sale, as bank and insurance stock, or any other object of commerce.

The principle that the property of the debtor is the common pledge of all his creditors, cannot be said in any manner to be peculiar to commercial law. The legislature has thought fit of late to modify it by repealing that part of the law which related to forced surrenders of property ; it has thereby made the debtor the sole and absolute judge of the period when a cession of goods to his creditors becomes proper, in order to enable them by a sale, to pay themselves. Until the cession be thus made, the debtor retains the power, and it becomes his duty, when a proper opportunity offers, to reduce his pro-perty into cash, for the purpose of discharging his debts. The purchaser, therefore, who substitutes his money for the pro-perty he receives from the debtor, cannot fear to be disquieted when no other ground of suspicion exists, but the protest of his vendor's notes, and his inability to meet his engagements. This was the ground of the decision of the court in the case of Brown vs. Kenner et al., 3 Martin, 270. Our statute con-tains also a textual provision to the same effect. 1 Moreau's Digest, 572, sec 17, proviso.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and this court proceeding to give such a judgment as in our opinion ought to have been given below ; it is fur-ther ordered, adjudged and decreed, that on the plaintiff exe-cuting a notarial act of sale for the lots mentioned in the petition, within twenty days after the present judgment shall have become final, the defendant is to comply with the terms of sale, by assuming the payment of a note of Samuel Thompson, secured by mortage on said property, and due on the 14th of April, 1837, for one thousand three hundred and ninety-three dollars and seventy-five cents ; to give his notes, bearing mortgage on the property, dated the 20th of Feb-

ruary, 1837, at one, two, and three years, for twenty-eight thousand and six dollars and twenty-five cents; to give his endorsed note or notes, dated the 8th of April, and payable at six months after date, for two thousand dollars; in all, thirty-one thousand four hundred dollars; paying, however, in cash, the amount of such notes, the day of payment of which may have arrived, according to his contract, instead of giving such note or notes, with interest at five per cent. from the time of payment of each instalment; the defendant and appellee paying costs in both courts.