313 So.2d 626 (1975)
PLACID OIL COMPANY, Plaintiff and Appellant,
v.
Watson TAYLOR et al., Defendants and Appellees.
No. 4453.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1975.
Rehearing Denied June 18, 1975.
Writ Granted September 11, 1975.
*627 Herschel M. Downs, Shreveport, and Armand A. Gutierrez, Dallas, for plaintiff-appellant.
Sam Nelken, and Whitehead & McCoy by C. R. Whitehead, Jr., Gahagan and Gahagan by H. C. Gahagan, Jr., Gerard F. Thomas, Jr., Natchitoches, Luther S. Montgomery, Shreveport, Makar & Whitaker by John Makar, Sam J. Friedman, Daniel T. Murchison, Natchitoches, Robert J. Donovan, Jr., Shreveport, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
Following our original decision in this case, 291 So.2d 892 (La.App.1st Cir. 1974), the Supreme Court granted certiorari, 294 So.2d 832 (1974). The Supreme Court reversed our decision but remanded the case to us for our consideration of an issue upon which we did not pass, La., 306 So.2d 664 (1975).
*628 This is a concursus proceeding, LSA-C.C.P. Article 4651 et seq. Placid Oil Company, as lessee under several oil, gas and mineral leases, deposited into court royalties accruing on two 20-acre tracts. Impleaded as adverse claimants to the royalties were (1) certain Taylor heirs, who originally owned the land, and (2) Mrs. Betty Beason, who claimed to own certain mineral interests.
The alleged dispute arose out of two mineral deeds from some, but not all, of the Taylor heirs to C. C. Copeland in 1964. The Taylors contended these mineral deeds were absolute nullities because the consideration by Copeland, a non-lawyer, was a contract to furnish legal services in clearing the titles of the Taylor heirs. Mrs. Beason, who later acquired the Copeland mineral interests, contended these deeds to Copeland were valid.
After suit was filed in the district court, Mrs. Beason compromised with 12 of the Taylor heirs. The district judge held the Copeland mineral deeds were null and void. However, he gave effect to the compromise agreements.
There was no appeal from the district court judgment by either Mrs. Beason or the Taylor heirs. Therefore, as between the adverse claimants the judgment of the district court is res judicata and fixes their respective proportions of royalty ownership.
However, Placid Oil Company appealed because its leases from the Taylor heirs provided only a 1/8 royalty, whereas the lease from Judge Jim Johnson, one of Mrs. Beason's predecessors in title, provided a ¼ royalty. Placid had deposited a full ¼ royalty attributable to the mineral interests in dispute, but it prayed for a refund as to all funds in excess of those necessary to satisfy the 1/8 royalty under the Taylor heirs' leases.
In our original decision, we agreed with the district judge that the Copeland mineral deeds were null and void. However, with one judge dissenting, we reversed that part of the judgment which gave effect to the compromise agreement between Mrs. Beason and 12 of the Taylor heirs. Thus, we held Mrs. Beason owned no part of the royalties on deposit, that the Taylor heirs owned the royalties, and that these royalties were payable under the leases from the Taylor heirs that provided for only a 1/8 royalty.
On writs, the Supreme Court held the Copeland mineral deeds are not absolute nullities on their face, nor was their absolute nullity proved by evidence showing that the services performed by Copeland were in violation of the statute prohibiting the practice of law by unlicensed persons. Thus, the Supreme Court recognized the validity of both the Copeland deeds and the compromise agreements.
At the conclusion of its decision, the Supreme Court remanded the case to our Court with the following statement:
"If there were no other issue remaining in this case, we would simply reinstate the judgment of the district court. However, by the brief filed in the intermediate court, we find that Placid Oil, in the alternative, had urged that at least some of the Copeland heirs (Should be Taylor heirs.) had executed a lease to it prior to the recordation of the Copeland deeds, so that (it is argued) as to the interest of these heirs (whether they compromised with Mrs. Beason or not) Placid's royalty liability could not exceed 1/8, as provided by such lease. As to this contention, we will follow our usual practice to remand to the intermediate court for consideration of those issues which have not been passed on by the prior courts, when resolution of them is necessary before entry of any final decree by us."
On remand to this Court, Placid points to the following facts which are shown by the record: One of Placid's leases, dated March 19, 1964 and recorded on April 3, *629 1964, was executed by Watson Taylor covering Tract 58. Another of its leases, also dated March 19, 1964 and recorded on April 3, 1964, was executed by Pap C. Taylor, Watson Taylor and Robert Taylor covering Tract 59. Both of these leases provide for royalty of 1/8. The interest of Robert Taylor is not involved in this litigation because he did not sell his mineral rights to C. C. Copeland. However, Pap C. Taylor and Watson Taylor sold all of their mineral rights to C. C. Copeland by a mineral deed dated April 3, 1964 and recorded on April 6, 1964, which was three days after the above described 1/8 royalty leases were recorded.
The mineral deed from Casson Pap Taylor and Watson Taylor to C. C. Copeland contains the usual clause that "This grant is subject to a mineral lease now affecting said lands but includes the same interest hereinabove set forth in and to all rights, rentals and royalties accruing under said lease." In view of this express recognition in the mineral deed to Copeland that the mineral grant by Casson Pap Taylor and Watson Taylor was subject to the prior recorded leases, Placid contends the only royalties acquired by Copeland were those provided for in the two leases, i.e., royalties based on 1/8.
Copeland sold his rights to L. M. Hudson on May 8, 1964, and Hudson sold his rights to Judge Jim Johnson on June 10, 1964. Both of these mineral deeds also contain the provision that the rights granted were subject to existing mineral leases. On February 5, 1965, Judge Jim Johnson executed the lease in favor of Placid Oil Company which provides for a ¼ royalty. Placid contends that when Judge Jim Johnson transferred all of his mineral interests to Mrs. Betty Beason by deed dated July 2, 1966, he conveyed the Pap C. Taylor and Watson Taylor mineral interests subject to the 1964 leases from Pap C. Taylor and Watson Taylor, which provided for only 1/8 royalties. Placid says that since it was not a party to the later compromise agreements, it is not affected by them. Placid claims the difference between the ¼ royalties deposited and the 1/8 royalties owed to those mineral interests leased by Pap C. Taylor and Watson Taylor in 1964.
The rule of law urged by Placid is that an oil, gas and mineral lease, entered into by a lessor who has purchased mineral rights subject to a prior lease granted by his predecessor in title to the same lessee, does not supersede, or effect a novation of, the prior lease, where the lessor has also acquired previously unleased mineral rights, and there is no stipulation in the second lease with regard to its effect upon the provisions of the lease granted by the lessor's predecessor in title. Placid cites LSA-C.C. Article 2185 which defines a novation as a contract consisting of two stipulations: "One to extinguish an existing obligation, the other to substitute a new one in its place." Placid also cites LSA-C.C. Article 2190 which provides that novation is not presumed and the intention to make it must clearly result from the terms of the agreement. There were no provisions in the Judge Johnson lease in 1965 indicating an intention to extinguish the 1964 leases from Pap C. Taylor and Watson Taylor, nor to substitute in their place a new lease of those interests with a royalty of ¼ instead of 1/8.
We conclude Placid's contentions are correct. Placid has attached to its brief filed in this Court on remand an exhibit showing the ownership of the royalty interests and the funds on deposit under its position which we sustain.
In her brief on remand, Mrs. Beason argues at the outset that Placid's position cannot be upheld because Louisiana law does not allow a mineral lessee to attack the title of its lessor. In its decision remanding this case, the Supreme Court stated it originally granted certiorari to consider the question of whether Placid could continue to attack the title of Mrs. Beason, its lessor, after by her compromise with the other claimants there were no longer *630 any conflicting claims as between the lessor interests, citing Gulf Refining Company v. Glassell, 186 La. 190, 171 So. 846 (1936), and the Official Revision Comment under LSA-R.S. 31:121 of the New Mineral Code. However, after granting certiorari the Supreme Court did not reach this issue because it decided preliminarily that the Copeland mineral deeds were valid.
It is our view that on the remand to this Court, Placid is not attacking Mrs. Beason's title. It is true that in the Court of Appeal Placid did attack Mrs. Beason's title to her mineral interests, contending they derived from the Copeland mineral deeds which were absolute nullities. As stated above, our Supreme Court indicated in its decision remanding this case that it has serious doubts as to whether Placid had the right to continue to attack the title of Mrs. Beason after there was no longer any conflict between the adverse claimants. Nevertheless, regardless of whether Placid had the right to attack the title of Mrs. Beason in the Court of Appeal, all issues regarding the title of Mrs. Beason have now been finally resolved by the Supreme Court.
The issue now before us is not Mrs. Beason's title to her mineral interest. The narrow question is whether the mineral interest which Mrs. Beason acquired through mesne conveyances from Pap C. Taylor and Watson Taylor are subject to the 1/8 royalty leases originally executed by Pap C. Taylor and Watson Taylor, or whether they are subject to the later ¼ royalty lease from Judge Jim Johnson, covering these same mineral interests, together with other interests. This is the question which the Supreme Court has requested we decide on remand. The Supreme Court has not remanded to us for consideration any issue regarding the title of Mrs. Beason to her mineral interests.
Mrs. Beason's next argument is that Placid agreed with Johnson to pay a ¼ royalty on all minerals owned by him. The argument is that Johnson would have refused to execute the lease in favor of Placid if Placid had made known at the time the fact that some of the mineral interests being leased from Johnson were already subject to prior recorded leases held by Placid providing for only a 1/8 royalty.
The first answer to this argument, as stated above, is that the mineral deed from Casson Pap Taylor and Watson Taylor to C. C. Copeland expressly states that the minerals conveyed were subject to an existing mineral lease. Under the rule of law urged by Placid, as stated above, the lessor of these mineral interests was bound by the prior recorded leases of these same interests by his predecessors in title. Furthermore, there was no novation. Novation is not presumed and must be expressly stated in the agreement. There were no provisions in the Judge Jim Johnson lease indicating an intention that the prior leases of the Casson Pap Taylor and Watson Taylor mineral interests were extinguished nor that the new lease was substituted for the prior leases as to these interests.
Mrs. Beason also argues that since this issue was not passed upon by the trial court, it is not now reviewable by the appellate courts, citing Devillier v. City of Opelousas, 247 So.2d 412 (La.App.3rd Cir. 1971) and the cases cited therein. Actually, the rule as stated in Devillier is that ordinarily issues not passed on by the trial court are not reviewed by the appellate court, but the appellate court, in discharging its duty to render judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the necessary evidence to determine the question, even though no ruling was made on that issue by the trial court, LSA-C.C.P. Article 2164, and Comment a under that article. In the present cases, we have the duty and the authority to pass on this issue, not only under the rule of the Devillier case stated above, but under the express direction of our Supreme Court in its decision remanding this case to us.
*631 Mrs. Beason's final contention is based on an exception of res judicata which was filed in this Court after the case was remanded to us by the Supreme Court. In this exception, Mrs. Beason argues that under the compromise transaction, the judgment of the district court which was not appealed by the adverse claimants and the decision of our Supreme Court, all issues as to the title of Mrs. Beason are now res judicata. For the reasons stated above, we agree that there is no longer any issue as to the title of Mrs. Beason. The issues which the Supreme Court directed us to decide on remand have not been compromised nor decided by any court. The exception of res judicata is therefore overruled.
For the reasons assigned, we decide that the leases from Pap C. Taylor and Watson Taylor to Placid Oil Company, dated March 19, 1964 and recorded on April 3, 1964, which leases provide for a 1/8 royalty, must be given full force and effect, and consequently that Placid's royalty liability, as to these mineral interests leased by Pap C. Taylor and Watson Taylor before the sales to Copeland, does not exceed 1/8. Accordingly, the judgment of the district court is amended so as to decree that the ownership of the royalty interests and the funds on deposit in the registry of the court are as shown on the exhibit which is appended to and made a part of this opinion. Otherwise than as amended, the judgment of the district court is affirmed. All costs of the review in this court are taxed against the money deposited.
On remand from the Supreme Court, judgment of the district court affirmed as amended.
HOOD, J., dissents and assigns written reasons.

 EXHIBIT
 attached to and made a part of brief of Placid Oil Company
--------------------------------------------------------------------------------
TRACT 58: E¼ of NE¼ of NE¼ of Section 28, Township 11 North, Range 6 West, Natchitoches Parish,
 Louisiana.
 Proportion of
 Tract 58 Funds
 on deposit in
Name Royalty Interest Court Registry
----------------------------------------------------------------------------------------------------
1. PEARLY NASH DEMERY 6/72 of 1/8 (.0104167) .051724
2. EDNA TAYLOR MORGAN 6/72 of 1/8 (.0104167) .051724
*3. CAISON "PAP" TAYLOR 6/72 of 1/8 (.0104167) .051724
*4. NANCY WILLIAMS TAYLOR 36/72 of 1/8 (.0625000) .310344
5. DELORES ANN WARDELL BLACKWELL 75% of 1/72 of 1/8 (.0013020) .006466
6. ESSIE MAE WARDELL BLACKMON 75% of 1/72 of 1/8 (.0013020) .006466
7. DOROTHY MAE WARDELL DORSEY 75% of 1/72 of 1/8 (.0013020) .006466
8. ORA LEE WARDELL (EVANS) 75% of 1/72 of 1/8 (.0013020) .006466
9. MRS. BETTY BEASON 25% of 4/72 of 1/8 (.0017361) .060344
 (compromise with Delores plus }
 Ann Wardell, Essie Mae 6/72 of 1/8 (.0104167)
 Wardell Blackmon, Dorothy (Pap Taylor compromise)
 Mae Wardell Dorsey, and
 Ora Lee Wardell Evans)
10. PLACID OIL COMPANY 52/72 of 1/8 (.0902778) .448276
TOTAL: _______________________ _______
 58/72 of 1/4 (.2013887) 1.000000
*NOTE: In accordance with the agreement of compromise signed by them, the interests
of Caison "Pap" Taylor and Nancy Williams Taylor in such royalties in the E½ of NE¼
of NE¼ of Section 28-11N-6W terminate after the above payments are made out of
the registry of the Court, and such royalty interests are thereafter owned by and payable
to Mrs. Betty Beason.

*632
-------------------------------------------------------------------------------------------------------------------------------
TRACT 59: W½ of NE¼ of NE¼ of Section 28, Township 11 North, Range 6 West, Natchitoches Parish,
Louisiana
 Proportion of
 Tract 59 Funds
 on deposit in
Name Royalty Interest Court Registry
-------------------------------------------------------------------------------------------------------------
*1. PEARLY NASH DEMERY 66/792 of 1/8 (.0104166) .073991
 (subject to Judge Jim
 Johnson Lease)
*2. EDNA TAYLOR MORGAN 103.8/792 of 1/8 (.0163826) .116368
 (102/792 subject to Johnson
 Lease; 1.8/792 subject to
 Taylor Lease)
*3. CAISON "PAP" TAYLOR 103.8/792 of 1/8 (.0163826) .116368
 (102/792 owned when he
 executed 1964 lease; 1.8/792
 inherited from Watson Taylor
 subject to same lease)
4. DELORES ANN WARDELL BLACKWELL 75% of 17.3/792 of 1/8 (.0020478) .014546
 (17/792 subject to
 Johnson Lease; 0.3/792
 subject to Taylor Lease)
5. ESSIE MAE WARDELL BLACKMON 75% of 17.3/792 of 1/8 (.0020478) .014546
 (17/792 subject to
 Johnson Lease; 0.3/792
 subject to Taylor Lease)
6. DOROTHY MAE WARDELL DORSEY 75% of 17.3/792 of 1/8 (.0020478) .014546
 (17/792 subject to
 Johnson Lease; 0.3/702
 subject to Taylor Lease)
7. ORA LEE WARDELL (EVANS) 75% of 17.3/792 of 1/8 (.0020478) .014546
 (17/792 subject to
 Johnson Lease; 0.3/792
 subject to Taylor Lease)
8. ALEX TAYLOR 75% of 40.8/792 of 1/8 (.0048296) .034305
 (36/792 subject to
 Johnson Lease; 4.8/792
 subject to Taylor Lease)
9. ROBERT TAYLOR 75% of 4.8/792 of 1/8 (.0005682) .004036
 (subject to Taylor Lease)
10. JERRY L. WARDELL 75% of 0.3/792 of 1/8 (.0000355) .000252
 (subject to Taylor Lease)
11. JIMMY L. WARDELL 75% of 0.3/792 of 1/8 (.0000355) .000252
 (subject to Taylor Lease)
12. MRS. BETTY BEASON 168/792 of 1/8 (.0265152) .188341
 Compromise with:
 Pearly Nash Demery = 66/792 subject to Johnson Lease
 Edna Taylor Morgan =102/792 subject to Johnson Lease
13. MRS. BETTY BEASON 25% of 115.4/792 of 1/8 plus .148935
 Compromise with: 104/792 of 1/8 (.0209674)
 Dorothy Mae Wardell Dorsey = 17/792 @ 1/4; 0.3/792 @ 1/8
 Ora Lee Wardell Evans = 17/792 @ 1/4; 0.3/792 @ 1/8
 Essie Mae Wardell Blackmon = 17/792 @ 1/4; 0.3/792 @ 1/8
 Delores Ann Wardell Blackwell = 17/792 @ 1/4; 0.3/792 @ 1/8
 Jerry L. Wardell = 0.3/792 @ 1/8
 Jimmy L. Wardell = 0.3/792 @ 1/8
 Alex Taylor = 36/792 @ 1/4; 4.8/792 @ 1/8
 Robert Taylor = 4.8/792 @ 1/8
 _______ ________
 104/792 11.4/792
14. ELECTRA RAY 32/1440 of 1/22 of 1/8 (.0001263) .000897
15. IDELL RAY WILLIAMS 32/1440 of 1/22 of 1/8 (.0001263) .000897
16. SIRETTA RAY JOHNSON 32/1440 of 1/22 of 1/8 (.0001263) .000897
17. ONEITO RAY RIVERS 32/1440 of 1/22 of 1/8 (.0001263) .000897
18. MINERL MYRTLE RAY (LEVI) 32/1440 of 1/22 of 1/8 (.0001262) .000897
19. EUGENE RAY 32/1440 of 1/22 of 1/8 (.0001262) .000897
20. PHILLIP TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
21. FELENARD (FLENORE) TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489

*633
22. HENRY TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
23. ELMORE TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
24. JOE NATHAN (JONATHAN) TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
25. RAFE TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
26. NATHANIEL TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
27. SWEENEY TAYLOR 16/1320 of 1/22 of 1/8 (.0000689) .000489
28. EDDIE TAYLOR 16/1320 of 1/22 of 1/8 (.0000688) .000489
29. BETTY JEAN TAYLOR 16/1320 of 1/22 of 1/8 (.0000688) .000489
30. TENNESSEE (LIZZIE) TAYLOR 16/1320 of 1/22 of 1/8 (.0000688) .000489
31. ETHEL MOORE WILLIAMS SHAW 36/792 of 1/8 plus .045740
 16/120 of 1/22 of 1/8 (.0064394)
32. TIMMIE TAYLOR 16/120 of 1/22 of 1/8 (.0007576) .005381
33. EDRICA (ED) TAYLOR 1/120 of 1/22 of 1/8 (.0002841) .002018
34. PLACID OIL COMPANY 117/792 of 1/8 (.0184659) .131167
 attributable to
 Caison "Pap" Taylor and
 compromising collateral
 heirs of Watson Taylor:
 Caison "Pap" Taylor (original lease) = 102.0/792
 (inherited from Watson Taylor) = 1.8/792
 Edna Taylor Morgan = 1.8/792
 Delores Ann Wardell Blackwell = 0.3/792
 Essie Mae Wardell Blackmon = 0.3/792
 Dorothy Mae Wardell Dorsey = 0.3/792
 Ora Lee Wardell Evans = 0.3/792
 Alex Taylor = 4.8/792
 Robert Taylor = 4.8/792
 Jerry L. Wardell = 0.3/792
 Jimmy L. Wardell = 0.3/792
 _________
 117.0/792
35. PLACID OIL COMPANY 57/792 of 1/8 (.0089962) .063901
 attributable to non-compromising
 collateral heirs of Watson Taylor
 designated as parties 14 through 33 ________________________ ________
 TOTAL: 446/792 of 1/4 (.1407828) 1.000000
* NOTE: In accordance with the compromise agreement signed by them, the interests
of Pearly Nash Demery, Edna Taylor Morgan, and Caison "Pap" Taylor in such royalties
in the W½ of NE¼ of NE¼ of Section 28-11N-6W terminate after the above payments
are made out of the registry of the Court, and such royalty interests are thereafter owned
by and payable to Mrs. Betty Beason.

HOOD, Judge (dissenting).
I am unable to agree with the conclusions reached by the majority.
My colleagues erred first, I think, in holding that "Placid is not attacking Mrs. Beason's title" in the matter which is before us now on remand. I think Placid clearly is attacking her title, and that the majority has sustained that attack, although the jurisprudence is established that the lessee cannot assail the title of its lessor.
The majority also erred, I believe, in holding that the oil, gas and mineral lease from Judge Jim Johnson to Placid Oil Company, dated February 5, 1965, did not supersede, or effect a novation of, two previously recorded leases from Johnson's author-in-title to the same lessee, Placid. In my opinion the documents themselves show that the lease executed by Johnson to Placid superseded the previously recorded leases. I also interpret the evidence as showing that the parties, Johnson and Placid, clearly intended for the 1965 lease to supersede *634 the previously recorded contracts, which in effect were between the same parties affecting the same land.
I think the judgment rendered by the trial court is correct and should be affirmed.
For these reasons, I respectfully dissent.